**Michael POLK, Appellant,**

v.

**MUTUAL SERVICE LIFE INS. COMPANY, et al., Respondent.**

**No. CX–83–1705.**

Court of Appeals of Minnesota.

Feb. 22, 1984.

Patrick J. Feehan, Lawrence & Costello, Red Wing, for appellant.

Charles Richardson, Richardson & Richardson, Red Wing, for respondent.

Considered and decided by POPOVICH, C.J., FOLEY and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Polk sought damages for wrongful termination and wrongful withholding of termination benefits pursuant to an "Agent's Contract". Respondent Mutual Service Life Ins. Co. (Mutual) moved for summary judgment on all issues. Summary judgment was granted June 17, 1983 in Goodhue County District Court. We affirm.

## FACTS

Polk and Mutual entered into an Agent's Contract on Sept. 15, 1970 whereby Polk would sell insurance for Mutual on commis-

sion. Paragraph 2 of the contract provided that either party could terminate the contract at will upon 30 days written notice. It further provided that Mutual could terminate for cause effective immediately upon notice.

Paragraph 4 provided that Polk would advance the interests of Mutual and not insure clients with or become a licensed agent of another insurer without Mutual's consent. However, Mutual allowed agents to broker risks with other insurers where Mutual did not write the type of insurance involved. This practice ceased if Mutual later started handling the line of insurance. Prior to 1980, Polk, with Mutual's permission became licensed with American Life, and also wrote insurance for Dairyland. His commissions with these companies were so small in comparison with his total commissions that Mutual felt he was still in compliance with the contract.

In February, 1980, Polk, without permission or knowledge of Mutual became licensed with seven other insurers, all in direct competition with Mutual. Polk immediately began writing insurance with these companies, and a large percentage of the contracts he wrote for them was insurance written formerly for Mutual. Polk claims this business with the new insurers was in keeping with his past practice of writing with other companies.

In May of 1980, Mutual became aware of Polk's new business. It informed Polk that he could not continue to be licensed with other companies and still continue with Mutual. Polk was given 90 days to become "unlicensed". This deadline went unmet, and in January, 1981 Mutual offered to give Polk six months to terminate his relationship with the other companies if Polk would promise to turn in all of his licenses with any company except Mutual; and rewrite with Mutual, all the business he had taken from Mutual.

Polk refused to terminate with the other companies because of their advantageous rate structure. He claimed Mutual was uncompetitive and that he would lose business without the others. Polk's gross receipts went from $47,310.96 in 1979 to $65,-276.51 in 1980.

Paragraph 11 of the Agent's Contract provided that if the agent agreed in writing not to compete with Mutual for a two year period following his termination, the company would pay prescribed monthly benefits to the agent. Mutual terminated Polk in February 1981 and offered to narrow the non-compete clause so that Polk could qualify for termination benefits. Polk refused to sign any agreement. He continued to actively solicit Mutual's policyholders and rewrite their insurance with his other companies.

## ISSUES

1. Were there any issues of material fact concerning either Polk's termination or Mutual's denial of termination benefits to preclude summary judgment?

## ANALYSIS

The only issues facing the appellate court when reviewing a summary judgment order are: "(1) whether there are any genuine issues of material facts and (2) whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (1979). The moving party has the burden of proof. *Nord v. Herreid*, 305 N.W.2d 337, 339 (1981). The appellate court "must view the evidence most favorably to the one against whom the motion was granted." *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (1982).

Paragraph 2 of the Agent's Contract reads:

2. This contract shall continue at the will of the parties, subject to termination by either party upon at least thirty days' written notice to the other party, provided that termination because of the agent's failure to advance the best interests of the company, his violation of an insurance law of the state in which he is licensed, or termination for any other cause may be made effective immediately upon notice.

Mutual gave Polk a termination notice after Polk made it clear by both words and action that he had no intention of writing insurance exclusively for Mutual as required by his employment contract. Polk was not, however, terminated under the cause provision. The general rule is that contracts having no fixed term are terminable at will by either party. *Meredith v. John Deere Plow Co.*, 185 F.2d 481, 482 (8th Cir.1950). This rule is applicable to insurance agency contracts having no fixed termination. 16A Appleman Insur. Law and Practice, §§ 8953, 8954 (1968). The letter of termination sent to Polk expressly stated that he was terminated by thirty days written notice pursuant to paragraph 2 of the Agent's Contract and quoted the provision, "at the will of the parties...." Where the language of a contract is plain and unambiguous, there is no room for construction. *Starr v. Starr*, 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (1977). The court will not read an ambiguity into an unambiguous document in order to be able to alter or vary its terms. *Verlo v. Equitable Life Assurance Soc'y of U.S.*, 562 F.2d 1034, 1036 (8th Cir.1977).

A case with similar contract provisions is *Martin v. Equitable Life Assurance Soc'y of U.S.*, 553 F.2d 573 (8th Cir.1977) The contract called for termination at will by either party, or for cause. Although evidence at trial established that the real reason for plaintiff's discharge was because he entered the real estate business, his termination was pursuant to the "at will" provision and not "for cause". The *Martin* court found that the contract was not ambiguous with respect to termination rights, and that there was nothing in the "for cause" provision which would manifest an intent that it must be the exclusive basis for termination. There, as here, each party reserved the right to terminate the contract at will.

The Agent's Contract, paragraph 11.(d) provides that *"if at the time of termination ..."* (emphasis supplied):

(d) The agent agrees in writing that for two years after such termination he will not directly or indirectly, for himself or as agent, representative, employee or partner of others, engage in the insurance business in competition with the companies in the state or states in which the agent has been licensed to sell insurance for the companies, or solicit any of their policyholders in such states for insurance of the type or kind then being written by the companies,
then the company will pay monthly to the agent ....

Polk met all conditions necessary to receive termination benefits except that of not competing with Mutual in the Red Wing area. Without the restrictive covenant, Mutual would not grant Polk termination benefits. After Polk was terminated, on February 16, 1981, Mutual offered him a modified form of the non-compete clause contained in the original Agent's Contract, narrowing the area from statewide to 50 miles around Red Wing, so that he could still qualify for the termination benefits. Polk refused to sign, and sent a letter to Mutual Service policyholders advising them that although he would no longer be representing Mutual he could fill all their insurance needs through the other fine companies he represented. In fact, Polk was quite successful in rewriting insurance for Mutual policyholders.

It is clear from the language of 11.(d) that plaintiff had the right to leave Mutual at any time without being subject to a non-compete clause. If he wanted to receive termination benefits for two years he would have to sign the contract. It was his decision whether it would be economically more beneficial to receive benefits or to compete. He made the decision and has rewritten much of Mutual's business with other companies he now represents. The reasonableness of the non-compete clause and whether the court should "blue pencil" the clause are not an issue where appellant has clearly exercised his option to compete. Mutual is not attempting to prevent him from competing, they choose only not to pay him benefits while he is rewriting their business with other companies. Polk also

claims damages. There is nothing in the record to support his claim. If anything, he benefited as a result of violating the Agent's Contract while still employed with Mutual.

### DECISION

Viewing the affidavits, Polk's deposition, exhibits and the contract in the light most favorable to Polk, we find that there is no question of material fact. The contract provisions are clear and unambiguous. Summary judgment is affirmed.